IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 92-1984
_____


WILLIAM BABB,

Plaintiff-Appellant,

versus


DAVID ANTHONY DORMAN, and CITY OF RICHARDSON, TEXAS,

Defendants-Appellees.



_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(September 19,  1994)


Before HENDERSON*, SMITH, and EMILIO M. GARZA, Circuit Judges.


HENDERSON, Circuit Judge:


------------------------------------------

* Circuit Judge of the Eleventh Circuit, sitting by designation.

William Babb appeals from the final judgment entered in the United States District Court for the Northern District of Texas dismissing his 42 U.S.C. § 1983 complaint against David Anthony Dorman and the City of Richardson, Texas.  For the reasons stated below, we affirm.

## I.  BACKGROUND

This case arose out of the circumstances surrounding Babb's arrest and prosecution for public intoxication, in violation of Tex. Penal Code Ann. § 42.08.  According to the facts alleged in his amended complaint,[1] Babb and an intoxicated female passenger were traveling eastbound on East Arapaho Road in the City of Richardson, Texas (the "City") during the early morning hours of May 27, 1990 when the passenger became ill.  Feeling that she might vomit at any moment, she suddenly thrust open the door on her side of the moving vehicle.  After checking the view from behind and without violating any traffic laws, Babb pulled the automobile to the side of the road to assist her.  Shortly thereafter, Dorman, an officer with the City police department, pulled up from behind in his squad car.  He checked Babb's driver's license and questioned him about his prior activities that night, including his alcohol consumption.  Babb explained that earlier he had been out playing darts and was forced to pull over when his passenger became ill. He also informed Dorman that he had consumed approximately five

---

[1]Babb filed his original petition on May 30, 1991.  On June 11, 1991, he filed an amended complaint pursuant to Fed.R.Civ.P. 15(a), which permits a party to amend a pleading once, as a matter of course, at any time before service of a responsive pleading.

beers over the course of several hours, but stated that he was not intoxicated and felt fine. Dorman then requested Babb to step out of the automobile to perform several field sobriety tests. When Babb told Dorman that he was unable to effectuate three of the four tests because of back and knee injuries, Dorman placed him under arrest for driving while intoxicated ("DWI").

Babb was then transported to the City jail where he was videotaped performing various tests and answering questions. In addition, he was administered a Breathalyzer test, which registered a blood alcohol content of 0.08, a level below that required under Texas law for presumptive intoxication.[2] At that point, Dorman changed the charge from DWI to public intoxication.[3] Babb alleged that Dorman did so pursuant to an unconstitutional policy promulgated by the City whereby persons arrested for DWI are instead charged with public intoxication, without regard to probable cause, whenever a Breathalyzer test reveals a blood alcohol content of less than 0.10. He contended further that, in accordance with another City policy, Dorman caused the destruction

---

[2]The term "intoxicated" is defined by Texas law as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or (B) having an alcohol concentration of 0.10 or more." Tex.Rev.Civ.Stat.Ann. § 67011-1(a)(2)(A), (B). To be convicted of the offense of driving while intoxicated, a person must be impaired by drugs or alcohol to the degree required by § 67011-1(a)(2)(A), (B), while driving or operating a motor vehicle in a public place. Id. §67011-1(b).

[3]An individual commits the offense of public intoxication if he "appears in a public place under the influence of alcohol or any other substance, to the degree that [he] may endanger himself or another." Tex. Penal Code Ann. § 42.08(a).

3

of the videotaped interview, which would have established that he was not a danger to himself or others. On January 3, 1991, Babb went to trial for and was acquitted of the charge of public intoxication.

Babb subsequently filed this lawsuit urging that Dorman and the City, acting separately and in concert, willfully, knowingly and purposely deprived him of his constitutional rights of access to favorable evidence and to be free from arrest, detention and malicious prosecution without probable cause, as guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments. In addition to these federal causes of action he alleged state common law claims for false arrest, false imprisonment and malicious prosecution.

Aside from the accusation about the destruction of the videotape, Babb advanced in his amended complaint certain legal conclusions in an effort to lend credence to his argument concerning the absence of the elements necessary to sustain the charge of public intoxication. In particular, he claimed that (1) the City jail was not a "public place" as specified in the public intoxication statute[4] and (2) the crime of public intoxication requires a greater degree of intoxication to authorize a conviction than that necessary for a charge of DWI. Babb reasoned that the fact that Dorman chose not to charge him with DWI confirmed that

---

[4]"Public place" is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." Tex. Penal Code Ann. § 1.07(a)(29).

4

his conduct did not rise to the necessary level of danger proscribed by the statute.

Along with their answers to the complaint, the defendants filed a joint motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), asserting that the allegations made therein were insufficient to meet the "heightened" pleading requirement necessary to overcome a defense of qualified immunity available to Dorman.[5]  In addition, they maintained that the statements charging a conspiracy between Dorman and the City were conclusory and therefore failed to state a claim for relief.

Babb responded to the motion to dismiss, reiterating the factual allegations of his complaint and arguing once again that Dorman's failure to pursue the charge of DWI proved that he was possessed of the normal use of his mental and physical faculties within the meaning of the DWI statute.   He extrapolated that, given the retention of these capacities, he could not possibly have been such a danger to himself or others as required by Texas law to support his arrest for public intoxication.  He repeated that the City jail where he was charged with the offense was not a "public place" within the meaning of the public intoxication statute and

_____

[5]The qualified immunity defense is available to individual municipal officials, but not to municipalities.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. ___, ___, 113 S.Ct. 1160, ___, 122 L.Ed.2d 517, 523 (1993).  To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense.  See Jacquez v. Procunier, 801 F.2d 789 (5th Cir. 1986); Elliott v. Perez, 751 F.2d 1472 (5th Cir. 1985); see also Schultea v. Wood, No. 93-2186, 1994 WL 384497, slip op. 5636, 5639 n.2 (5th Cir. Aug. 9, 1994).

5

that these factors, considered together, established the lack of probable cause for the charge. With respect to the heightened pleading standard, he alleged

> that Defendant DORMAN knew or should have known that the legal standards for the offense of Public Intoxication are greater than that for DWI. Clearly, the complaint demonstrates that Defendant Dorman knew or should have known that if Plaintiff could not be arrested for the offense of DWI, no probable cause would exist to arrest Plaintiff for the offense of Public Intoxication. . . . Further, the Plaintiff contends that the jail is not a public place as defined by Texas law. Further, Plaintiff's Complaint clearly contends that the arrest for Public Intoxication was accomplished without probable cause.

(R1-49).

The district court granted the defendants' motion and dismissed the claims for damages against Dorman as well as the conspiracy count against the City. Babb then sought leave to amend the complaint and submitted a proposed second amended complaint, which was substantively identical to the amended complaint under scrutiny here, except for an added allegation that Dorman's actions violated clearly established law. (See R1-74, ¶ 19). The district court denied leave to amend, granted the City's motion for summary judgment on the charges respecting its alleged illegal policies and entered final judgment in favor of the defendants.[6]

---

[6]The district court did not specifically address Babb's pendant state law claims in any of its orders. Nevertheless, they were implicitly denied with the entry of final judgment. Babb did not brief the dismissal of these claims on appeal, nor did he refer to them at oral argument. We therefore treat them as abandoned. See Price v. Digital Equip. Corp., 846 F.2d 1026, 1028 (5th Cir. 1988). Babb also appears to have ceded on appeal his charge

6

## II.  DISCUSSION

On appeal, Babb urges again that there was no probable cause to charge him with public intoxication and that his pleadings were sufficient to defeat Dorman's qualified immunity defense.  He also claims that the district court abused its discretion by denying him leave to file the second amended complaint.  He further challenges the dismissal of the conspiracy count, as well as the grant of summary judgment to the City.

Our review of the record reveals that summary judgment in favor of the City was plainly warranted and does not merit further discussion.  Although the City concedes on appeal that the district court's reasoning behind its dismissal of the conspiracy count was faulty, with which we agree,[7] we nevertheless affirm for the reason that Babb's allegations regarding the conspiracy are conclusory at most.  See Lynch v. Cannatella, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (bald allegations of conspiracy are insufficient to state a

---

against Dorman with respect to the destruction of the videotape. His  argument in this regard is confined to the grant of summary judgment to the City.  In any event, were we to consider the merits of the dismissal of this contention, we would affirm for failure to state a claim for relief under Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (only the bad faith destruction of potentially useful evidence may constitute a denial of due process).

[7]The district court dismissed this count on the ground that the City could not conspire with a person who was immune from liability.  However, the Supreme Court has upheld municipal liability for § 1983 violations notwithstanding the qualified immunity of the individual municipal defendants.  See Brummett v. Camble, 946 F.2d 1178, 1182 (5th Cir. 1991) (citing Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685-86 (1980)), cert. denied, ___ U.S. ___, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992).

§ 1983 claim); <u>Coral Petroleum, Inc. v. Banque Paribas-London</u>, 797 F.2d 1351, 1355 n.3 (5th Cir. 1986) (district court's judgment may be affirmed on any appropriate ground). We address Babb's remaining contentions in turn.

A.    <u>Probable cause and sufficiency of the complaint</u>

In <u>Elliott v. Perez</u>, 751 F.2d 1472 (5th Cir. 1985), this court announced a heightened pleading standard which must be satisfied whenever there is alleged a defense of qualified immunity. In such cases, the complaint must "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." <u>Id.</u> at 1473. Before us, Babb takes the position that <u>Elliott</u> is no longer valid authority after <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. ___, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), in which the Supreme Court struck down the heightened pleading requirement in § 1983 actions against municipalities. <u>See</u> <u>id.</u> at ___, 113 S.Ct. at ___, 122 L.Ed.2d at 524. In so doing, however, the Court cautioned that "municipalities do not enjoy immunity from suit - either absolute or qualified - under § 1983." <u>Id.</u> at ___, 113 S.Ct. at ___, 122 L.Ed.2d at 523. The Court, thus, had "no occasion to consider whether . . . qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." <u>Id.</u> Given this express reservation of the issue, we decline to read into <u>Leatherman</u> any change in the law respecting actions against individual municipal defendants and conclude that

8

we are still bound by Elliott and its progeny in determining whether Babb stated a claim against Dorman.

"Qualified" or "good faith" immunity shields government officials performing discretionary functions from liability "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir. 1986) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)); see also Streetman v. Jordan, 918 F.2d 555, 556 (5th Cir. 1990); Saldana v. Garza, 684 F.2d 1159, 1162-65 (5th Cir. 1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). The protection afforded by the defense is an "immunity from suit, not simply immunity from liability." Geter v. Fortenberry, 849 F.2d 1550, 1552 (5th Cir. 1988). Consequently, we have long held that "questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery." James v. Sadler, 909 F.2d 834, 838 (5th Cir. 1990); see also Hunter v. Bryant, 502 U.S. ____, ____, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991) (stressing the importance of resolving the immunity issue at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability).

In suits alleging illegal arrest, the qualified immunity determination turns on whether "'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established

9

law and the information the . . . officer[ ] possessed.'  Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."  Hunter, 502 U.S. at ___, 112 S.Ct. at 536, 116 L.Ed.2d at 595 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523, 531-32 (1987)); see also Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989) ("the issue is 'not probable cause in fact but "arguable" probable cause.'") (quoting Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)); Saldana, 684 F.2d at 1164 (police officer may be immune from liability under § 1983 even if it is later determined that probable cause for an arrest did not exist).  The qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986).  Thus, a qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause.  Id.  On the other hand, "if officers of reasonable competence could disagree on this issue, immunity should be recognized."  Id.  Keeping in mind Elliott's heightened pleading requirement, therefore, we must look to whether Babb has alleged sufficient facts from which it can be discerned that no reasonable officer could have believed that probable cause existed to arrest him for public intoxication.[8]  Our review of this question is de

---

[8]This determination is an objective one.  See Harlow, 457 U.S. at 815-19, 102 S.Ct. at 2736-39, 73 L.Ed.2d at 408-11.  That is, where an officer's conduct violates clearly established law, his immunity defense must ordinarily fail despite his good faith belief to the contrary because "a reasonably competent public official

10

novo.  <u>Elder v. Holloway</u>, 510 U.S. ___, ___, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344, 351 (1994).

Babb's contention that Dorman knew or should have known there was no probable cause to change the charge to one for public intoxication turns in large measure upon his assertion that, as a matter of law, the Texas public intoxication statute requires a degree of intoxication greater than that necessary to sustain a conviction for DWI.  He claims this is so because the Texas legislature specifically provided that public intoxication is not a lesser included offense of DWI, <u>see</u> Tex. Penal Code Ann. § 42.08(g), and because Texas caselaw uniformly recognizes that a high degree of impairment must be present to justify an arrest for public intoxication.

We have observed on more than one occasion that, "'in holding our law enforcement personnel to an objective standard of behavior, our judgment must be tempered with reason.'"  <u>Gassner v. City of</u>

---

should know the law governing his conduct."  <u>Id.</u> at 819, 102 S.Ct. at 2738, 73 L.Ed.2d at 411.  By the same token, Babb's conclusory allegation that Dorman purposefully deprived him of his constitutional rights is insufficient to subject Dorman "either to the costs of trial or to the burdens of broad-reaching discovery." <u>Id.</u> at 817-18, 102 S.Ct. at 2738, 73 L.Ed.2d at 410; <u>see also</u> <u>Malley</u>, 475 U.S. at 341, 106 S.Ct. at 1096, 89 L.Ed.2d at 278 (an allegation of malice is insufficient to defeat qualified immunity if the defendant acted in an objectively reasonable manner); <u>Jureczki v. City of Seabrook, Tex.</u>, 760 F.2d 666, 669 (5th Cir. 1985) (an officer's bad faith in obtaining or executing an arrest warrant does not give rise to a § 1983 action where probable cause exists; likewise, an officer's good intent is irrelevant when he contravenes settled law), <u>cert. denied</u>, 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986).  Babb's allegation that his arrest was motivated by a City policy is irrelevant, therefore, to the qualified immunity issue.

Garland, Tex., 864 F.2d 394, 397 (5th Cir. 1989) (quoting Saldana,

684 F.2d at 1165).

> An officer on the beat is not expected to have
> and apply the knowledge of a constitutional
> scholar, whose stock in trade is giving
> concrete application to lofty, abstract legal
> principles. . . . Rather, we ask only that he
> act in accordance with what a reasonable
> officer "should or should not know about the
> law he is enforcing."

Id. (quoting Saldana, 684 F.2d at 1165).

While it is true that public intoxication may not be a lesser

included offense of DWI, this fact alone does not preclude a police

officer from charging an individual with public intoxication rather

than DWI when, in the exercise of his discretion, the circumstances

warrant an arrest for that offense. Furthermore, after conducting

an exhaustive review of the Texas cases dealing with public

intoxication, we can confidently state that it is not clearly

established that the offense of public intoxication requires, in

all instances, a degree of intoxication greater than that for DWI.[9]

---

[9]None of the cases cited by Babb address the degree of inebriation necessary under Texas law to support the crime of public intoxication as opposed to DWI; nor did we discover any such cases through our independent research. The cases construing the existence of probable cause for a public intoxication arrest focus on whether the defendant was "in a position to be a danger to himself or another - walking down the middle of the street, in a car, attempting to purchase tire chains for a car - or was in such an extreme state of intoxication that the suspect was incoherent and/or staggering and swaying." See Berg v. State, 720 S.W.2d 199, 201 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd) (and the cases cited therein). It follows that the degree of intoxication required to sustain such a charge will vary with the complexity of the task being performed by the individual and the attendant surroundings.

We further hold that, in light of the facts alleged and the established law, a reasonable officer could have believed that he was justified in holding the appellant for public intoxication.[10] According to the amended complaint, Dorman knew that Babb was operating an automobile after having consumed five beers, which resulted in a blood alcohol content of 0.08. He also knew that Babb had entrusted to his care, an extremely intoxicated passenger who required sudden assistance at a time when Babb was traveling on a public road.[11] Even treating as true Babb's contentions that he did not feel intoxicated or violate any traffic laws, as we must on a motion to dismiss, a blood alcohol level of 0.08 indicates some intoxication and impairment. We cannot say, under these circumstances, that an officer could not have reasonably believed that Babb was a danger to himself or others within the meaning of Tex. Penal Code Ann. § 42.08(a). To defeat the motion to dismiss, Babb was required to allege facts showing not only that this charge was illegal, but that it "was so illegal as to violate clearly established law." Saldana, 684 F.2d at 1165. This, he failed to do.

The fact that Babb was later acquitted of the offense is of no consequence. For purposes of probable cause, "[t]he determination as to the possible danger element is reviewed not under the

[10]We need not and do not decide whether probable cause actually existed.

[11]Babb's claim that the City jail was not a "public place" is spurious. Although Babb may not have been a danger to himself or others while at the jail, the arrest in this case was based upon his conduct while on a public street.

standard used in a judicial determination of guilt," Berg v. State, 720 S.W.2d 199, 201 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd), but rather by "whether at that moment the facts and circumstances within [Dorman's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Babb] had committed or was committing an offense[,]" Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964). We therefore affirm the district court's finding that his amended complaint failed to allege facts sufficient to overcome Dorman's qualified immunity defense.[12]

B.  Denial of leave to amend

Babb also contends that the district court abused its discretion by denying him leave to amend his complaint a second time after dismissing the claims against Dorman for failure to satisfy the heightened pleading requirement. Ordinarily, a district court should provide a plaintiff with the opportunity to cure such a defect. Procunier, 801 F.2d at 792. Here, however,

---

[12]We could also affirm the dismissal of the complaint on the alternative ground that Babb failed to contest his initial arrest for DWI. The constitution is not offended by the absence of probable cause for an arrest where probable cause exists for a crime other than the one charged "provided that the 'crime under which the arrest is made and [the] crime for which probable cause exists are in some fashion related.'". Gassner, 864 F.2d at 398 (internal quotation marks and citations omitted). The offenses of DWI and public intoxication are sufficiently related within the meaning of this rule. Trejo v. Perez, 693 F.2d 482, 486 (5th Cir. 1982); see also, United States v. Hathorn, 451 F.2d 1337, 1341 (5th Cir. 1971) (per curiam opinion on petition for rehearing) (upholding the legality of an arrest for DWI on the ground that the defendant could have been arrested for public drunkenness).

14

Babb filed a detailed response to the motion to dismiss in which he urged that his amended complaint was sufficient. Moreover, his proposed second amended complaint added nothing to aid in the determination of the qualified immunity issue except for the legal conclusion that Dorman's actions violated clearly established law. However, "[t]o state a claim, a pleader must allege facts, not legal conclusions." Hanson v. Town of Flower Mound, 679 F.2d 497, 504 (5th Cir. 1982). On this record we find no error in denying the amendment. Another pleading "would do nothing but prolong the inevitable, and would only subject the defendants to exactly those hardships the [qualified] immunity doctrine is supposed to relieve." Procunier, 801 F.2d at 793.

## III. CONCLUSION

Having carefully considered the facts as alleged and the relevant law pertaining thereto, we agree with the district court that the appellant has failed to rebut Dorman's asserted good faith immunity defense. The district court's judgment is therefore AFFIRMED.

15