DECISION
This is an appeal by plaintiff-appellant, Rita L. Flowers, from a judgment of the Franklin County Court of Common Pleas finding in favor of defendant-appellee, Officer Spencer Salyers, on plaintiff'sFourth Amendment claim against the officer, and denying plaintiff's motions for new trial and judgment notwithstanding the verdict.
On January 22, 1999, Officer Salyers stopped plaintiff while she was driving on Fairway Boulevard, Whitehall, Ohio. It is undisputed that plaintiff was speeding at the time. During the stop, Officer Salyers asked plaintiff if she had been drinking. Plaintiff initially denied having anything to drink, but then stated that she had consumed one glass of gin earlier in the evening. Officer Salyers administered field sobriety tests to plaintiff, in which the officer asked plaintiff to recite the alphabet, touch her nose, and to perform a walk and turn test as well as a one-leg stand test. The officer also conducted the horizontal gaze nystagmus ("HGN") test. Following administration of the field sobriety tests, Officer Salyers placed plaintiff under arrest and transported her to the Whitehall Police Department.
At the police department, plaintiff underwent a breathalyzer test. On the first attempt, the blood alcohol content ("BAC") reading was .053, but plaintiff was requested to perform the test a second time because her breaths were too slow. On her second attempt, the BAC test result was .044. Officer Salyers charged plaintiff with speeding and operating a vehicle under the influence of alcohol.
On September 17, 1999, plaintiff filed a complaint, naming as defendants the City of Whitehall and Officer Salyers. Plaintiff alleged that, despite the fact that she was given two separate breath tests for alcohol content, and that the results of both tests confirmed that she had only a legal amount of alcohol in her system, she was arrested and charged with "OMVI," a charge that was subsequently dismissed before trial. Plaintiff's complaint alleged claims for false arrest and imprisonment, malicious prosecution, and violations of plaintiff's rights under the "Fourth Amendment to the U.S. Constitution, and42 U.S.C. § 1983."
On August 7, 2000, plaintiff filed a notice of voluntary dismissal of her claims against defendant city of Whitehall. The matter came for trial before a jury beginning June 6, 2001. Following the presentation of evidence, the jury returned a verdict in favor of defendant. In response to an interrogatory, the jury found that defendant had probable cause to believe that plaintiff was operating her vehicle while under the influence of alcohol.
On appeal, plaintiff sets forth the following three assignments of error for review:
ASSIGNMENT OF ERROR NO. 1:
 THE JURY'S VERDICT AND THE JUDGMENT HEREIN ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND ARE NOT SUPPORTED BY THE EVIDENCE IN THE RECORD.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT'S REFUSAL TO GIVE A JURY INSTRUCTION BASED UPON THE SUPREME COURT DECISION IN STATE OF OHIO V. HOMAN WAS PRE-JUDICIAL ERROR.
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT'S INSTRUCTION TO THE JURY THAT THE PLAINTIFF WAS REQUIRED TO PROVE "NO REASONABLE LAW ENFORCEMENT OFFICER COULD HAVE BELIEVED THAT PLAINTIFF WAS DRIVING UNDER THE INFLUENCE OF ALCOHOL" WAS AN INACCURATE STATEMENT OF THE LAW PREJUDICIAL TO THE PLAINTIFF, AND REVERSIBLE ERROR.
Under the first assignment of error, plaintiff contends that the jury's verdict was against the manifest weight of the evidence and was not supported by the evidence presented.
In Miller-Wagenknecht v. City of Munroe Falls (2001), Summit App. No. 20324, the court stated:
 When the manifest weight of the evidence is challenged "an appellate court conducts the same manifest weight analysis in both criminal and civil cases." * * *
 The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. * * * Moreover, "every reasonable presumption must be made in favor of the judgment and the findings of facts[.]" * * * Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." * * *
As noted under the facts, plaintiff does not dispute that she was speeding at the time Officer Salyers stopped her vehicle. While plaintiff does not argue that the initial stop by the officer was improper, she contends that the officer lacked probable cause to subsequently charge her with operating a vehicle under the influence of alcohol.
In Evans v. Smith (1994), 97 Ohio App.3d 59, 72, the court stated that "[t]he Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, `requires the [s]tates to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.'" In general, the existence of probable cause involves questions of fact that should be "determined by the jury where the evidence submitted is susceptible to different inferences by reasonable minds." Prince v. City of Shaker Heights (1989), Cuyahoga App. No. 54397. "Probable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautions person in the belief that an individual is guilty of the offense with which he or she is charged." State v. Medcalf (1996), 111 Ohio App.3d 142,147.
In the present case, Officer Salyers acknowledged during his testimony at trial that, because of the length of time that had passed since the incident, he found it necessary to review the notes he made contemporaneous with his arrest of plaintiff. Part of the evidence before the jury included the police report of Officer Salyers, which was admitted into evidence without objection. In the narrative, Officer Salyers related the following. While on patrol on Fairway Boulevard, the officer clocked a vehicle traveling 40 miles per hour in a 25 miles per hour zone. The officer approached the driver and "smelled a moderate odor of an alcoholic beverage on or about her person." The officer asked the driver if she had been drinking and she replied "no." The officer told her that he smelled alcohol on her person and she again said "no," but she indicated that her husband, who was at home, had been drinking. At that point, the officer told the driver that it would be better if she did not lie, and she then stated that she "had one drink of gin."
The officer asked the driver to step from the car to perform field sobriety tests. He asked her to recite the alphabet and she "did good until she stated x, y, m, z, x, y, and z." The officer requested that she do a one-leg stand test, and she was "unsteady and put her foot down on the count of 2, 8, 19, and 21." When the officer asked the driver to perform the "walk and turn" test, she "did not touch heel to toe on all steps," and she "turned improperly, and did not look at her steps." When the officer administered the HGN test, he received "two clues in the right eye and one in the left eye." The officer then asked the suspect to perform the "finger to nose test," and she "was swaying back and forth and missed her nose with her right hand once and began to use the wrong hand once."
In contrast to the facts set forth in the report, plaintiff testified that she performed well on all of the field sobriety tests. Plaintiff admitted that she was speeding and that she initially told the officer she had not had any alcohol that evening, but she claimed that she had consumed only one drink earlier in the evening at approximately 6:00 p.m.
Upon review, we conclude that a reasonable trier of fact could have, in considering the totality of the circumstances, concluded that there was probable cause for the officer to charge plaintiff with driving under the influence. Here, there was evidence that, if believed, indicated that the officer pulled over plaintiff for speeding, and the officer detected an odor of alcohol. While plaintiff initially denied having consumed any alcohol, she subsequently admitted having a drink earlier in the evening. According to the police officer's report, which was admitted into evidence, plaintiff had trouble reciting the alphabet, she put her foot down several times in performing the one-leg stand test, she performed the heel to toe test incorrectly, she was "swaying back and forth" and missed her nose with her right hand in performing the "finger to nose test," and the officer observed two clues in plaintiff's right eye and one clue in her left eye in conducting the HGN test. While plaintiff testified that she performed well on the field tests, the issue of her credibility and that of the other witnesses was a matter within the province of the trier of fact. We note that, despite plaintiff's claim that she only had one drink at 6:00 p.m., the jury heard evidence that she tested .053 on the breathalyzer machine over four hours later, at approximately 10:45 p.m., and the jury was free to disbelieve plaintiff's testimony on this issue. Under the facts of this case, we conclude that the trier of fact did not lose its way in finding in favor of defendant, and we will not substitute our judgment for that of the jury.
Plaintiff's basic contention is that no reasonable officer would have charged plaintiff with driving under the influence where the results of the breathalyzer test indicated less than the legal limit. We disagree. In Finucane v. Town of Belchertown (D.C.Mass. 1992), 808 F. Supp. 906, the plaintiff failed to satisfactorily perform certain portions of field sobriety tests administered at the scene, but argued that the officer lacked probable cause to arrest her because the reading of the BAC machine was .00, indicating there was no trace of alcohol in plaintiff's system. The court, in reviewing the facts as a whole, including plaintiff's failure to properly perform the field sobriety tests, found that the facts constituted "sufficiently trustworthy information to warrant a reasonably prudent person in believing that the plaintiff was operating a motor vehicle under the influence of alcohol." Id. at 910. The court further held "[t]he fact that the breathalyzer test indicated that plaintiff was not under the influence of alcohol does not affect the conclusion that plaintiff's arrest was supported by probable cause." Id. In Ruttan v. Bd. of Commrs. (D.C.Kan. 2000), No. CIV. A. 99-2221-GTV, although plaintiff contended that his breath alcohol test result of .069 indicated he was "legal to drive," the court found that the officer had probable cause to arrest plaintiff where his performance on several field sobriety tests strongly suggested he was intoxicated. The court held that "[s]uch readings are not * * * dispositive of probable cause to arrest or detain a person for driving under the influence of alcohol." Id.
In the present case, we note that the Whitehall City Code, similar to the Ohio Revised Code, prohibits both the operation of a motor vehicle while under the influence of alcohol (Code Section 333.01[a][3]) and the operation of a motor vehicle with a concentration of ten hundredths of one gram or more by weight of alcohol per 210 liters of the person's breath (Code Section 333.01[a][1]). These code provisions represent separate offenses. Thus, even if the results of a breathalyzer test would not support a charge under one code provision, such fact does not necessarily preclude a finding that there existed probable cause for the officer to file charges against plaintiff for driving under the influence of alcohol. See Finucane, supra. In the present case, because there was evidence upon which the jury could have found that the officer's actions were supported by probable cause, plaintiff's first assignment of error is without merit and is overruled.
Under the second assignment of error, plaintiff contends that the trial court erred in failing to give a jury instruction based upon the Ohio Supreme Court's decision in State v. Homan (2000), 89 Ohio St.3d 421. In Homan, the court held that field sobriety tests not conducted in strict compliance with standardized testing procedures should be suppressed.
Homan, however, was decided on August 16, 2000, subsequent to the events in this case. Further, Homan involved a criminal prosecution, and we agree with defendant's contention that a heightened standard of strict liability, as would apply in a criminal context, is inapplicable to the facts of this case. Thus, we find that the trial court did not err in failing to give the requested instruction.
Accordingly, plaintiff's second assignment of error is without merit and is overruled.
Under the third assignment of error, plaintiff contends that the trial court erred in giving a proposed jury instruction submitted by defendant over the objection of plaintiff. Specifically, plaintiff cites the following instruction given by the trial court to the jury:
 In order to find in favor of Plaintiff you must find and determine that no reasonable law enforcement officer could have believed that Plaintiff was driving under the influence of alcohol. (Tr. 392.)
Plaintiff contends that the use of the phrase "could have believed" is irrelevant for purposes of deciding probable cause. Plaintiff maintains that the court's use of the phrase opened the jury's collective mind to the consideration of subjective beliefs of the defendant police officer. In response, defendant argues that the jury charge comports with federal and Ohio law.
We agree with defendant's contention that the instruction was an accurate statement of the law. See Hunter v. Bryant (1991), 502 U.S. 224,228 ("Under settled law, Secret Service Agents Hunter and Jordan are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest Bryant"); Williams v. Franklin Cty. Bd. of Commrs. (2001), 145 Ohio App.3d 530, 548 (defendants entitled to summary judgment on plaintiffs' Section 1983 claims; a reasonable officer "could have believed" that he had lawful reason to enter plaintiffs' home to investigate and arrest individual); Babb v. Dorman (1994), 33 F.3d 472,477 ("In suits alleging illegal arrest, the qualified immunity determination turns on whether `a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the * * * officer possessed.'"). Plaintiff's third assignment of error is not well taken and is overruled.
Based upon the foregoing, plaintiff's three assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
TYACK, P.J., and LAZARUS, J., concur.