**ACTION ON SMOKING AND HEALTH, Petitioner,**

v.

**DEPARTMENT OF LABOR, et al., Respondents.**

No. 92–1661.

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1994.

Decided July 12, 1994.

John Banzhaf, III, Washington, DC, argued the cause for petitioner. With him on the briefs were Peter H. Meyers, Washington, DC and Kathleen E. Scheg, Hyattsville, MD.

Charles F. James, Atty., U.S. Dept. of Labor, Washington, DC, argued the cause for respondents. With him on the brief were Joseph M. Woodard, Associate Sol., Occupational Safety and Health Admin. and Ann Rosenthal, Atty., U.S. Dept. of Labor.

Before MIKVA, Chief Judge, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Action on Smoking and Health ("ASH") challenges, on several grounds, the Occupational Safety and Health Administration's ("OSHA") delayed and proposed regulation of environmental tobacco smoke ("ETS") as a potential occupational carcinogen. Due to justiciability and finality considerations, we deny ASH's petition.

## I. Background

On July 31, 1992, ASH petitioned OSHA to initiate a rulemaking pursuant to OSHA's Cancer Policy, 29 C.F.R. §§ 1990.101–1990.-152, to regulate environmental tobacco smoke, independent of other indoor air quality ("IAQ") contaminants, as a potential occupational carcinogen. On October 30, 1992, OSHA informed ASH by letter that it had not yet reached a final decision about whether and how to regulate ETS in the workplace but indicated that it was disinclined to focus on ETS in isolation from other indoor air quality contaminants. On December 22, 1992, ASH filed this petition for review claiming that OSHA has unreasonably delayed initiating a rulemaking to regulate ETS as a potential occupational carcinogen.

Before the parties completed their briefing for this case, OSHA initiated a rulemaking to regulate ETS and other indoor air quality contaminants. 59 Fed.Reg. 15968–16039 (April 5, 1994). In response, ASH claims that OSHA's proposed omnibus IAQ rulemaking will unreasonably delay promulgation of health and safety standards on ETS. ASH also claims that OSHA acted arbitrarily and capriciously and in violation of its own Cancer Policy by failing to initiate a separate rulemaking proceeding for ETS. We find petitioner's claim that OSHA unreasonably delayed initiating a rulemaking on ETS to be moot and find petitioner's claim of future delay not yet ripe for judicial review. Because final agency action is lacking, we do not reach the merits of petitioner's challenge to the omnibus nature of OSHA's proposed IAQ rulemaking.

## II. Discussion

The Occupational Safety and Health Act ("Act"), 29 U.S.C. § 655(f), and Administrative Procedure Act ("APA"), 5 U.S.C. § 704, respectively confer jurisdiction on this court to review health and safety standards that OSHA promulgates and other final agency action that OSHA undertakes under the Act. To ensure that agencies do not derogate their statutory duties and elude judicial review through agency inaction or

delay, this court has recognized a narrow exception to the finality requirement upon which judicial review is ordinarily conditioned: this court may assert jurisdiction over suits seeking relief from agency inaction or delay that jeopardizes our future statutory power of review. *See Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 75–76 (1984) (*"TRAC"*).

 Although petitioner's allegation that OSHA unreasonably delayed issuing health and safety standards for ETS qualifies for this exception, we do not reach the merits of this claim. Petitioner based its claim upon the period of delay prior to the agency's April 5, 1994 issuance of a Notice of Proposed Rulemaking on Indoor Air Quality Contaminants. Because ETS is among the contaminants that OSHA proposes to regulate in that rulemaking, petitioner's unreasonable delay claim is moot. *See United Steelworkers of America v. Rubber Mfrs. Ass'n,* 783 F.2d 1117, 1120 (D.C.Cir.1986). Petitioner further claims that the proposed omnibus rulemaking will violate the Cancer Policy's regulatory timetable and will unreasonably delay regulation of ETS. We find this claim unripe for judicial review and decline jurisdiction over it at this time.

The Supreme Court's decision in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), provides the starting point for our ripeness analysis. In *Abbott Laboratories,* the Court explained that the "basic rationale" of ripeness doctrine is:

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148–49, 87 S.Ct. at 1515–16. These principles gave rise to a two-part test that "requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515–16. Under this test, "if the interests of the court and agency in postponing review outweigh

the interests of those seeking relief, settled principles of ripeness squarely call for adjudication to be postponed." *National Ass'n of Regulatory Util. Comm'rs. v. Department of Energy,* 851 F.2d 1424 (D.C.Cir.1988) (quoting *State Farm Mutual Auto. Ins. Co. v. Dole,* 802 F.2d 474, 480 (D.C.Cir.1986)).

Under section 1990.142 of the Cancer Policy, a Notice of Proposed Rulemaking ("NPRM") on any given carcinogen "shall provide for no more than a sixty (60) day comment period, and may provide for a hearing, which shall be scheduled for no later than one hundred (100) days after publication of the Notice of Proposed Rulemaking. The commencement of the hearing may be postponed once, for not more than 30 days, for good cause shown." In addition, "[w]ithin one hundred twenty (120) days from the last day of any hearing or ninety (90) days from the close of any post hearing comment period, whichever occurs first, the Secretary shall publish in the FEDERAL REGISTER: (1) A final standard based upon the record in the proceeding; or (2) A statement that no final standard will be issued and the reasons therefor, or (3) A statement that the Secretary intends to issue a final rule, but that he is unable to do so at the present time." 29 C.F.R. § 1990.147(a).

 Although a conflict might arise between OSHA's proposed IAQ rulemaking and the Cancer Policy's regulatory timetable, we cannot now reasonably anticipate that it will. Because OSHA has not established a timetable for issuing its final rule on indoor air quality contaminants generally or ETS specifically, the agency has not even *proposed* to violate the Cancer Policy's timetable for promulgating a final rule on ETS, much less *actually* violated it. OSHA could complete its proposed rulemaking expeditiously and issue its final rule within the 120 day time period set forth in the Cancer Policy. OSHA could also determine that it is unable to issue its final rule within that period and, consistent with § 1990.147(a)(3), take an additional 120 days to issue its final rule. In sum, we cannot presently say that OSHA's proposed omnibus IAQ rulemaking will, in all likelihood, extend beyond the rulemaking schedule set forth in the Cancer Policy. (Although

we recognize that a conflict does exist between the NPRM and the Cancer Policy insofar as the designated comment period is concerned, ASH failed to raise this claim in its petition for review and we therefore decline to address it. *See* FED.R.APP.P. 28(a)(5); *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983).)

■ ASH further contends that OSHA's proposal to regulate ETS in an omnibus IAQ rulemaking instead of a separate ETS proceeding is arbitrary and capricious and violative of OSHA's Cancer Policy, 29 C.F.R. §§ 1990.101–1990.152. Because OSHA's proposal constitutes nonfinal agency action and petitioner makes no claim that it jeopardizes our future power of review, it is premature for us to reach the merits of petitioner's claim.

This court has jurisdiction to review final agency action that OSHA undertakes. *See* 29 U.S.C. § 655(f); 5 U.S.C. § 704. Agency action is final when it "imposes an obligation, denies a right, or fixes some legal relationship." *NRDC v. United States Nuclear Regulatory Comm'n,* 680 F.2d 810, 815 (D.C.Cir. 1982) (internal quotations omitted). OSHA's proposed rulemaking generates no such consequences. The comments that the agency receives during the notice and comment period may persuade the agency that it should regulate ETS in a separate proceeding. Alternatively, the factual record that the agency develops during the rulemaking may satisfy OSHA and, perhaps, ASH that an omnibus rulemaking on indoor air quality contaminants is the best course to pursue. OSHA also could find an omnibus rulemaking on indoor air quality contaminants too unwieldy and could decide to limit its proposed rule to ETS and a few other select indoor air quality hazards. In sum, the scope and shape of OSHA's final rule on ETS and other indoor air quality contaminants is still in flux. Because no legal consequences presently attach to OSHA's inclusion of ETS in the proposed omnibus rulemaking, it is premature for us to consider petitioner's challenge to the omnibus nature of OSHA's proposed rulemaking. Petitioner may renew its challenge if and when OSHA's rulemaking generates concrete, legal ramifications for petitioner.

### III. Conclusion

Petitioner's claim that OSHA unreasonably delayed initiating a rulemaking on ETS is mooted by the Notice of Proposed Rulemaking on Indoor Air Quality Contaminants that the agency issued on April 5, 1994. Petitioner's claim of future unreasonable delay is not yet ripe for judicial review and considerations of finality preclude us from reaching the merits of petitioner's challenge to the omnibus nature of OSHA's proposed rulemaking.

Although we do not find unreasonable agency delay on the facts now before us, we are mindful of OSHA's prolonged delay in regulating ETS. *TRAC* has made it clear that this court will not permit agency gridlock to frustrate the statutory mission Congress has given an agency. The teachings of *TRAC* should remind both parties that petitioner may renew its petition if OSHA fails to pursue its rulemaking with due dispatch.

For the foregoing reasons, the petition for review is dismissed without prejudice.

*It is so ordered.*